## BORAS WAFVERI AKTIEBOLAG v. UNITED STATES.

### No. 46238.

Court of Claims.
June 2, 1947.

William M. Aiken, of Washington, D. C. (E. B. Burling and Covington, Burling, Rublee, Acheson & Shorb, all of Washington, D. C., on the brief) for plaintiff.

Kendell M. Barnes, of Washington, D. C., John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and WHITAKER, MADDEN, JONES, and LITTLETON, Judges.

WHITAKER, Judge.

The issue in this case is just compensation for plaintiff's textile machinery which defendant requisitioned on March 23, 1943.

Plaintiff had ordered this machinery on February 13, 1940. After it had been manufactured it was boxed for export and shipped to Brooklyn, New York. Since plaintiff at the time was not able to get a license for its export to Sweden, it was placed in storage at Brooklyn. It remained there until requisitioned by the Board of Economic Warfare on March 23, 1943.

On March 16, 1944, this Board determined that $130,110.01 was just compen-

sation for the property requisitioned. This sum included $3,789.61 as compensation for delay in payment. Plaintiff refused to accept this amount. Accordingly, there was paid to it on August 3, 1944 the sum of $65,055.00, one-half of the amount of the award. Plaintiff sues for the difference between this amount and $169,034.13, which amount it says is just compensation.

Warehouse receipts for the machinery were held by the Guaranty Trust Company of New York to secure a letter of credit established by plaintiff with that bank. On August 6, 1942 the bank received directions from the United States Treasury Department to sell the machinery. At first the bank was required to sell only in the domestic market, but later it was authorized to sell either in the domestic market or anywhere in the Western Hemisphere. The bank made some effort to do so without success.

However, on October 13, 1942 one C. E. Halaby, who was the sales agent in Columbia, South America, for the Saco-Lowell Shops, the company which had sold the machinery to plaintiff, obtained an export license permitting him to export this machinery to Colombia, South America for sale to Tejidos de Roselon and Compania at an estimated price of $150,000.00. What effort he made to purchase the machinery from plaintiff does not appear, but on March 22, 1943 he purchased it from the Board of Economic Warfare contingent upon the Board's acquiring title thereto. This Board acquired title on the following day by requisitioning it from plaintiff. It then sold it to Halaby for $127,500.00. On May 3 following, Halaby exported it to South America.

The record does not disclose what Halaby actually sold the machinery for in Colombia, but it leaves no doubt about the fact that the machinery could have been sold in South America for not less than the ceiling price on sales for export established by the Office of Price Administration, which was $169,034.13. The testimony shows that such machinery was very scarce and that the foreign demand for it was great and that almost any price could have been obtained for it, subject only to the ceiling established by the Office of Price Administration.

■ Plaintiff had bought this machinery for export and was entitled to the price that it could have obtained for it on the export market. Swiss Confederation v. United States, 70 F.Supp. 235, 108 Ct.Cl. ——, and cases there cited. There is no doubt that the machinery could have been sold on this market at the price fixed by the Office of Price Administration. Presumably, plaintiff could have secured the necessary export license, since Halaby actually did secure one.

Indeed, defendant does not contest this export market price. Instead, it relies on a provision of the Price Regulations which it says would have prevented plaintiff from getting more than the price obtainable for second-hand machinery. Second-hand machinery, it says, under the Price Regulations was "any machine or part which has previously been used or purchased for use." Defendant concedes that this machinery was new and had not been used, but it says it was "purchased for use" and, therefore, was second-hand machinery under the regulations. Such machinery, it says, could not be sold for more than 85 percent of the price for which the manufacturer could have sold it. This price, it says, was $143,679.01.

Why the Office of Price Administration should promulgate a regulation which would permit a manufacturer of the machinery to demand $169,034.13, and would prohibit one who had purchased it from the manufacturer and who had not removed it from the cases in which the manufacturer had packed it for shipment from getting equally as much, we cannot understand. If such had been the intention of the Office of Price Administration, we would seriously question the validity of the regulation. If the manufacturer was entitled to demand $169,034.13 for the machinery, a person who had bought it from the manufacturer and still had it in the very crates in which the manufacturer had packed it for shipment would certainly be entitled to the same amount.

The price regulations do not in fact provide otherwise. Maximum Price Regula-

tion 136 in article 1390.5 (7 Fed.Reg. 5048) provides for maximum prices on sales by a manufacturer, and section 1390.10 (7 Fed. Reg. 5050) provides for maximum prices on sales by sellers other than the manufacturer. A comparison of those two sections shows that there was no intention to discriminate against a seller other than the manufacturer.

 Section 1375.1 (7 Fed.Reg. 5059) applies specifically to export prices and this also shows that there was no intention to discriminate against a seller other than the manufacturer. One who purchases from the manufacturer for export is entitled to demand no less a price than could have been demanded by the manufacturer, and this price the proof shows was $169,034.13.

The regulation upon which defendant relies applies only to used machinery. The definition of a second-hand machine, contained in paragraph (a), as one "which has previously been used or purchased for use," is elaborated upon in paragraphs (b) and (c). Paragraph (b) relates to rebuilt and guaranteed machines, for which a seller could get 85 percent of the price for new machinery, and paragraph (c) applies to "any other second-hand machine," for which the seller could get 55 percent of the price for a new machine. Obviously, neither applies to an unused machine which was still in the crates in which it had been packed by the manufacturer for shipment.

Plaintiff is entitled to the ceiling price for new machinery of $169,034.13.

Plaintiff is also entitled to an additional amount for delay in payment. The machinery was requisitioned on March 23, 1943 and plaintiff was paid the sum of $65,055.00 on August 3, 1944. A part of this delay, however was attributable to plaintiff. About a month after the requisition plaintiff was given formal notice thereof and was notified that a hearing would be held on May 18, 1943 for the purpose of ascertaining plaintiff's view as to the amount of just compensation. From time to time plaintiff requested a continuance of this hearing, and as a result it was not held until August 11, 1943. The delay in payment between May 18, 1943 and August 11, 1943, therefore, was attributable to plaintiff.

On March 16, 1944 defendant notified plaintiff that it had determined that $130,110.01 was just compensation. It was not until June 6, 1944 that plaintiff notified defendant that it did not acquiesce in this determination and demanded the payment to it of 50 percent of the amount thereof. For this period between March 16, 1944, and June 6, 1944 plaintiff is not entitled to compensation for delay in payment since it was a delay which it itself had caused. Except for these two periods, plaintiff is entitled to 4 percent per annum on $169,034.13 from March 23, 1943 to August 3, 1944. This totals $6,145.21. It is also entitled to 4 percent per annum on $103,979.13 from August 3, 1944 until the date of payment thereof, as compensation for delay in payment. Judgment will be entered for $103,979.13, plus $6,145.21, interest at 4 percent per annum on $169,034.13 for the period stated, and plus also interest at 4 percent per annum on $103,979.13 from August 3, 1944 until date of payment, as compensation for delay in payment. It is so ordered.

MADDEN, JONES, and LITTLETON, Judges, concur.

WHALEY, Chief Justice, took no part in the decision of this case.